# Twelfth Street Market Company *versus* Jackson.

1. In a suit by a broker against a corporation to recover commissions, he must establish his employment by a competent party authorized to bind the corporation, or prove a subsequent knowledge of, adoption and ratification of his services by the corporation.

2. Where a by-law gives the president of a corporation "the general charge and direction of the business of the company, as well as all matters connected with the interests and objects of the corporation," that does not include the authority to do an act, which, by another by-law, is expressly given to a separate committee.

3. The president of a corporation, without the knowledge or consent of the finance committee, to whom was given the power to "make arrangements for providing the necessary funds for meeting all liabilities of the company, and report to the board any suggestion they may consider advisable for paying off or discharging any of the permanent indebtedness of the company," employed a broker to procure a party to pay off an existing ground-rent upon the company's property, and take another security at a less rate of interest. After such a party had been procured, the president employed a second broker to notify the original holders that unless they reduced the rate of the ground-rent, it would be extinguished. Upon the holders agreeing to reduce the rate, the matter was then, for the first time, brought before the board and ratified, nothing being said about the employment of the first broker. In an action by him for his commissions, the court below allowed the jury to determine whether there was such an agreement between the president and the broker, and incidentally the question whether the company, by accepting the benefits of this broker's services, did not ratify his employment.

*Held*, that the president having no power to make such a contract, it was error to allow the jury to determine whether there was a ratification when there was no evidence that the facts were ever communicated to the board, or that they had knowledge of or assented to the acts alleged to have been done for the company's benefit.

January 31st 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of January Term 1883, No. 92.

[Twelfth Street Market Co. *v.* Jackson.]

Assumpsit, by Joseph T. Jackson against "The Twelfth Street Market Company," to recover commissions which plaintiff alleged he had earned in negotiating the reduction of the rate of a ground-rent upon defendant's property. Pleas, nonassumpsit, payment, and set-off.

On the trial, before ELCOCK, J., the following facts appeared:—On April 6th 1864, an Act of Assembly was approved, creating "The Twelfth Street Market Company" to have all the powers, privileges, and immunities of "The Farmer's Market Company," under their charter, approved March 19th 1859 (P. L. 250). These powers and restrictions were, inter alia, "to take in fee-simple or upon ground-rent such real or also personal estate as by them may be deemed necessary."

Section 4 provided: "That the management and control of the Market Company and the management of its property, shall be vested in, and the corporate powers of said company shall be exercised by a board of nine managers, who shall be elected by ballot. . . . They shall elect a president, secretary, and treasurer from among themselves, . . . and shall have general and entire control of the affairs and interests of the company."

The by-laws pertinent to the case were as follows:—

ARTICLE VII. "The president shall have the general charge and direction of the business of the company, as well as all matters connected with the interests and objects of corporation, and shall be ex officio a member of all standing committees."

ARTICLE XII. "There shall annually be appointed by the president, unless otherwise ordered by the board of managers, the following standing committees, to be each composed of three members, namely: A committee of finance, who shall make arrangements for providing the necessary funds for meeting all liabilities of the company, and report to the board any suggestion they may consider advisable for paying off, or discharging any of the permanent indebtedness of the company, declaring a dividend," etc.

The corporation bought a lot of ground at the northeast corner of Twelfth and Market streets, subject to a yearly ground rent of $6,000, principal $100,000. The president, subsequently, without any authority from the board of managers or the committee of finance, and without their knowledge, employed the plaintiff to procure a party to pay off the ground-rent and take a new one at five per cent. Plaintiff was to have one-half of one per cent. as his commissions. After the agent had succeeded in finding a customer to take the ground-rent at the reduced rate, the president, still acting without the knowledge or authority of the other members of the board, went to another broker and instructed him to notify the holders of the ground-

rent that the company was about to pay off or extinguish it, unless the rent was reduced to the rate of five per cent. The holders accordingly agreed to the reduction, and the president then communicated the successful results of his negotiations with the holders of the ground-rent to the board of. managers, by whom it was ratified, and a resolution was passed authorizing the president and secretary to execute the necessary legal papers.

The plaintiff claimed his commissions for having secured a purchaser in accordance with his agreement with the president, who had died before the claim was presented ; the claim was refused, and he thereupon brought this suit.

The defendant, having moved for a non-suit, which was refused, submitted the following points :—

1. That there is no evidence of any authority in the president of the defendant corporation to make the contract with plaintiff. Refused. :

2. That the verdict must be for the defendant. Refused.

3. That there is no evidence of any authority in the president of the defendant.corporation to make the arrangement to reduce the ground-rent, and the plaintiff has not earned his commissions. Refused.

The judge charged the jury as follows: " If you .find from the evidence that the plaintiff made the agreement to which he has testified with Mr. Rice, as president of the company, and that he performed his part of the agreement, then he is entitled to recover his commission. I have great doubt about the authority of Mr. Rice to make any such contract, but for the present purpose I charge you that he had ; and as this is a matter that depends entirely upon the charter and by-law, my direction to you can be reviewed by the court in banc."

Verdict and judgment for the plaintiff for $587.50. Thereupon, defendant took this writ, assigning for error, inter alia, the refusal of the defendant's points, and the portion of the charge quoted above.

*George Junkin*, for plaintiff in error.—The president had no authority to make such a contract. Boards of directors, managers, etc., are agents of the corporation only so far as authorized directly or impliedly by the charter: Angell & Ames on Corp. §§ 280, 291, 294 and 297 ; Allegheny County Workhouse *v.* Moore, 14 Norris 408 ; *In re* Turnpike Road, 5 Binney 481 ; Commissioners of Allegheny *v.* Lecky, 6 S. & R. 166 ; Comp. *v.* Carlisle Bank, 13 Norris 409.   One seeking to charge another through an agent, must not only establish the fact of agency, but also the extent of it : Union Refining Co. *v.* Bushnell, 7 Norris 91 ; Hays *v.* Lynn, 7 Watts 524 ; Moore's

[Twelfth Street Market Co. v. Jackson.]

Ex'rs *v.* Patterson, 4 Casey 505. If this contract had been in the line of the president's duties a recovery could be had against the company, but the by-laws gave to a particular committee power to make arrangements "for paying off or discharging any of the permanent indebtedness of the company:" Clendenon *v.* Pancoast (25 Smith 213); and all other cases which hold that where the broker brings the parties together and the price is agreed upon, and the bargain for the purchase and sale is made, he has earned his commission, are predicated upon the fact that the seller was *sui juris*, and had the right to sell. There was no evidence of the president acting as the business agent of the company in such a way that the actual authority of the company for his actions could be inferred.

*Richard P. White*, for defendant in error.—The president, under article VII. of the by-laws, is constituted the general manager of the corporation business, and he is expressly charged with the direction of all matters connected with its interests and objects. The language of that article was certainly calculated to satisfy the public that the president had ample authority to act for and bind the corporation. Article XII. does not modify the powers of the president as conferred upon him by article VII. of the by-laws; first, because any authority given to the committee must be held to be co-ordinate with those of the president; and secondly, because there are no words of repeal or modification, and the two articles must, therefore, stand together.

Even if the authority to employ the plaintiff were questionable, the company having made use of his services to secure the wished-for reduction, it does not lie in its mouth now to question it. If the president had authority to employ the one agent, he had authority to employ the other. And if the company allowed the one agent to use the other's services, and accepted the benefit derived from them, justice requires it to pay for what it has got. If corporators receive the avails and value of the acts of parties who trust and confide in their unauthorized agents, they adopt the act, and are responsible to those who, on the faith of such acquiescence, trusted their agents: Allegheny City *v.* McClurkan, 2 Harris 84; Bank *v.* Reed, 1 W. & S. 107; Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons 267. The broker secured a purchaser, and was entitled to his commission. There was ample evidence to support the verdict: Clendenon *v.* Pancoast, 25 Smith 12

Mr. Justice TRUNKEY delivered the opinion of the court, April 16th 1883.

The Twelfth Street Market Company has power to take in

fee-simple or upon ground-rent real estate necessary for a public market house. Its government and control, and the management of its property, and the corporate powers, are vested in a board of nine managers who shall have general and entire control of the affairs and interests of the company. Article VII. of the by-laws provides that the " president shall have the general charge and direction of the business of the company, as well as all matters connected with the interests and objects of the corporation, and shall be *ex officio* a member of all standing committees." And article XII. provides that the committee of finance " shall make arrangements for providing the necessary funds for meeting all liabilities of the company, and report to the board any suggestion they may consider advisable for paying off, or discharging any of the permanent indebtedness of the company."

However extensive the authority given to the president, it does not include what is expressly and in unmistakable terms given to the finance committee. That committee shall provide funds to meet all liabilities of the company, and report to the board their suggestions respecting the permanent indebtedness. The provisions of the two articles can well stand, without concurrent authority in the president over subjects which are only named when placed in the care of others. Even if the language of article VII. is so broad that it might be interpreted to embrace those subjects, the subsequent article shows there was no such intention.

The president was a member of the finance committee, but one member was not authorized to act alone. For transaction of business all should be convened, or warned so they may be present, for the advice of each may be useful though they do not unite in opinion : Allegheny County Workhouse *v.* Moore, 95 Pa. St. 408; Pike County *v.* Rowland, 94 Id. 238.

On June 13th 1879, the board of managers authorized the execution of an agreement with the Pennsylvania Company for Insurance on Lives and Annuities, for the reduction of the ground-rent from $6,000 to $5,000 per annum for a period of ten years, and that said rent should not be redeemable within said period. The plaintiff claims that the consummation of that agreement resulted from his services. He was employed by John Rice, president of the company, to secure a loan of $100,000 to pay off the principal of the ground-rent and create a new one, at five per centum, which service he performed by obtaining the promise of the Penn Mutual Life Insurance Company to loan the money and take an assignment of the ground-rent, or a new ground-rent, at five per centum, for ten years. Very soon after he communicated his success to Rice, the company closed its contract with the owner of the ground-rent for

[Blakeslee *v.* Directors of the Poor.]

the reduction.   But there is not a particle of evidence that any officer, or committee of the company, other than Rice, had knowledge of the plaintiff's employment by Rice, or of the negotiations with the Penn Mutual Life Insurance Company. Hence, the making of the contract with the owner of the ground-rent was not an adoption of the plaintiff's acts, or a ratification of his employment. His own testimony is, that Rice is the only person connected with the company that he saw about the matter, and that he never brought Rice and any one on behalf of the Penn Mutual Life Insurance Company together.

To entitle the plaintiff to recover, he must establish his employment as a broker by previous authority, or by acceptance of his agency and adoption of his acts : Keys *v.* Johnson, 68. Pa. St. 42.   " Unless they are authorized, the individual members of a corporation cannot bind it by an express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations :" Allegheny County Workhouse *v.* Moore, *supra*.   When there is no evidence that the facts were ever communicated to the party, or that he had knowledge of and assented to the acts alleged to have been done for him, it shall not be submitted to the jury to find a ratification : Moore *v.* Patterson, 28 Pa. St. 505.

Judgment reversed.