## Pollock, Appellant, *v.* Standard Steel Car Company.

*Corporation—Master and servant—Contract of employment—Treasurer.*

In an action against a corporation to recover compensation for negotiating a sale of cars manufactured by the corporation, the plaintiff is not entitled to recover, where it appears that he gave to the president of the company, with whom he negotiated for the cars, the

impression that he was buying them for a customer of his own, that he said nothing to the president about compensation for himself, that the promise to pay him for his services was made by the treasurer of the company who had no authority whatever to make such an agreement, and that the company never ratified the agreement thus made.

Argued Oct. 25, 1910.  Appeal, No. 126, Oct. T., 1910, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1906, No. 677, for defendant non obstante veredicto in case of Thomas H. Pollock v. Standard Steel Car Company.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Assumpsit to recover compensation for negotiating a sale of cars.  Before MACFARLANE, J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for plaintiff for $5,933.  Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant n. o. v.

*John C. Bane,* for appellant.—The question of the existence or nonexistence of the agency of Woods, was a question of fact for the jury: Lamb v. Irwin, 69 Pa. 436.

Where a person is employed, by one assuming to act in behalf of a corporation, to render services for it, and he renders such services with the knowledge of and without objection on the part of its officers, the corporation will be held to have ratified the employment, and will be bound to pay for the services: Mesick v. United Collieries Co., 15 Pa. Superior Ct. 316; Zabriskie v. R. R. Co., 64 U. S. 381; Garrard v. R. R. Co., 29 Pa. 154.

Neither an individual, nor an association, incorporated or unincorporated, can reap the fruits of an agent's unauthorized contract, and, at the same time, repudiate

the contract: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Meyerhoff v. Daniels, 173 Pa. 555; Wayne Title & Trust Co. v. Schuylkill Electric Ry. Co., 191 Pa. 90; Wojciechowski v. Johnkowski, 16 Pa. Superior Ct. 444.

*George B. Gordon,* with him *Wm. Watson Smith,* for appellee.—Woods had no authority to make the alleged contract.

Defendant never ratified the alleged contract: Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Zoebisch v. Rauch, 133 Pa. 532; Merrick Thread Co. v. Mfg. Co., 115 Pa. 314; Moore v. Patterson, 28 Pa. 505; Wright v. Burbank, 64 Pa. 247; Samuels v. Luckenbach, 205 Pa. 428; Johnson v. Steamship Co., 5 Cal. 408.

Opinion by Mr. Justice Brown, January 3, 1911:

Appellant's claim against the appellee is for commissions alleged to be due on a sale of 300 of its cars to the George's Creek Coal & Iron Company. The averment in his statement upon which he seeks to recover is that he was employed by the appellee to sell the cars to the coal and iron company and that L. G. Woods, the appellee's treasurer, made a verbal promise to pay him $15.00 for each car included in the order from the purchasing company. The claim is upon an express promise to pay a fixed sum for alleged services, and unless this was established at the trial, the plaintiff was not entitled to recover anything under the pleadings. The learned trial judge, in sustaining the motion for judgment for the defendant non obstante veredicto, was of opinion that, though the appellant had tried to secure the order for the 300 cars, he had failed to do so; but whether this conclusion, reached upon a review of all the evidence, was correct, is immaterial, for even assuming that he did procure the order, he failed to show any authority in Woods to bind the appellee to pay $15.00 for each car included in the order from the coal and iron company or any ratification by it of its treasurer's alleged act.

The negotiations between the appellant and appellee which led up to what he contends was his contract with it, began with the following letter from him to it:

"Monongahela, Pa., Nov. 4, 1903.
"The Standard Steel Car Co.,
   "Frick Bldg., Pittsburg, Pa.
"Mr. B. Wood:
   "Dear Sir:
   "I have been instructed by one of my customers who is operating a large Coal and Coke plant in W. Va. to procure prices and specifications on 250 Gondola Steel Cars and 100 large drop bottom steel hoppers.   Would be pleased to talk to your Mr. Wood in regard to this matter at any time that he can arrange to meet me.
                         "Yours respectfully,
                                   "T. H. Pollock.
                                             "M."

The next day J. M. Hanson, the president of the company, wrote and sent a telegram to the appellant, signed "L. G. Woods," of which the following is a copy:

"Pittsburg, Pa., November 5, 1903.
"T. H. Pollock,
   "Monongahela, Pa.
   "Can see you to-morrow or Saturday or any other time you will let me know.
                         "L. G. Woods."

Eleven days later—on the sixteenth of the month—the appellant called upon Woods, the treasurer of the company, and the substance of his testimony of what then and subsequently took place between them was that Woods introduced him to the president of the company to talk over the prices and designs of cars; that before being introduced to the president he was told by the treasurer to say nothing to the president about compensation; that the treasurer said this to him twice—the second time as they were about entering the office of the presi-

dent; that he talked to the president, but said nothing to him to indicate that he expected any compensation; that he received prices from the president at which the company would sell 350 cars to the George's Creek Coal & Iron Company, his customer; that after his interview with the president he again saw the treasurer, who promised to pay him $15.00 per car if he sold 350 at the price given him by the president; that the treasurer said nothing whatever to him about any authority to make this promise. From all that took place between the appellant and Hanson, the president of the defendant company, the latter was fully justified in regarding the former as the representative of the George's Creek Coal & Iron Company. As to this the learned trial judge correctly said that the burden was upon him to clear up the misapprehension which he himself had created by writing about the instruction of his customer and by allowing himself to be introduced by the treasurer of the company to its president as an engineer who had a customer. He entirely failed to show any authority in Woods to make the contract upon which he would hold the company, and the affirmative uncontradicted testimony is that the treasurer had nothing whatever to do with the sale of the company's cars, his duties, as defined by the by-laws, being confined to keeping the accounts of the receipts and disbursements of its moneys, of placing them to its credit in such depositories as might be designated by the board of directors and of keeping an account of stock registered and transferred in such form or manner as a board of directors might prescribe. The promise which the appellant alleges was made by him was no more binding upon the company as a promise by it than if it had been made by one of its subordinate employees.

But it is contended that even if Woods did not have any authority to bind the appellee by his promise to pay $15.00 for each car included in the order of the coal and iron company, his alleged act in making the contract with the appellant was ratified by the appellee. Rati-

fication presupposes knowledge of all material facts connected with the act intended to be ratified, and the question of ratification cannot arise in the absence of proof that the principal had knowledge of such facts: Wright v. Burbank, 64 Pa. 247; Twelfth Street Market Co. v. Jackson, 102 Pa. 269; Merrick Thread Co. v. Phila. Shoe Mfg. Co., 115 Pa. 314; Zoebisch v. Rauch, 133 Pa. 532. A principal can, of course, ratify the unauthorized act of his agent without full knowledge of all material facts connected with it if he intentionally and deliberately does so, knowing that he does not possess such knowledge and does not care to make further inquiry into the matter; but such is not the present case, for there is no evidence that Hanson, the president of the defendant company, or any one connected with it except Woods, had any knowledge that the appellant claimed to be acting as its agent in the sale of the cars, much less that he was doing so in pursuance of a contract with it to pay him $15.00 per car.

The judgment for the defendant non obstante veredicto is, therefore, affirmed.